UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUNDER'S AUTO CENTER,

    Plaintiff,

v.                                        CASE NO: 8:09-cv-456-T-23MAP

STATE FARM INSURANCE,

    Defendant.

_____/

## **ORDER**

The plaintiff sues (Doc. 5) State Farm Mutual Automobile Insurance Company ("State Farm") for slander. State Farm moves (Doc. 49) for summary judgment, and the plaintiff responds (Doc.56) in opposition. At a March 24, 2010, hearing, each party presented argument on the motion.

### Background

The plaintiff is an automobile repair shop in Polk County, Florida. State Farm issues automobile insurance policies to Florida customers. The plaintiff alleges that in 2004 State Farm began "steering" the plaintiff's current and potential customers to competing repair shops. State Farm allegedly "intentionally and unjustifiably interfered with [the plaintiff's] relationships with its customers by falsely stating to [the plaintiff's] customers and otherwise prospective customers . . . that [the plaintiff] was 'overcharging' its customers" and that the plaintiff repaired vehicles in an untimely, inefficient, and "sub-standard" manner. (Doc. 5, ¶ 19) The plaintiff alleges that State

Farm's "false, defamatory, and tortious statements have injured [the plaintiff] by 'steering' prospective . . . customers away from using [the plaintiff] to repair their vehicles." (Doc. 5, ¶ 10) The complaint identifies by name three "prospective customers" who "were State Farm insureds and would have had their vehicles repaired [by the plaintiff], in lieu of another automobile repair shop, but for" State Farm's false statements. (Doc. 5, ¶ 10)

## Discussion

To recover for slander, the plaintiff must show "1) that the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the plaintiff suffered damages as a result of the publication of the statement." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1140 (M.D. Fla. 2007). In response to the motion for summary judgment, the plaintiff submits affidavits from several prospective customers, each of whom avers that he would have commissioned the plaintiff to repair his vehicle but decided to use a different auto repair shop after hearing a State Farm agent utter a false statement about the plaintiff. For example, Glen Weekly was involved in an accident in 2006 while insured by State Farm. Weekly informed a State Farm representative that Weekly wanted to have the plaintiff repair Weekly's vehicle. Weekly avers that the State Farm representative "responded by stating . . . that Gunder's was overcharging customers. The State Farm representative then stated that my only option was State Farm's shop . . . in Lakeland, Florida." (Doc. 62-6). The plaintiff alleges that this statement is false because the plaintiff never charges more than the "prevailing competitive market rate." The plaintiff submits affidavits from other

- 2 -

repair shops in the area stating that State Farm routinely pays claims from other repair shops with rates similar to or greater than the rates charged by the plaintiff.

State Farm argues that even if State Farm agents uttered false statements about the plaintiff, the statements are privileged. Under Florida law:

> "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation."

Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984) (quoting 19 Fla. Jur. 2d Defamation and Privacy § 58 (1980)). State Farm argues that the statements are privileged because "State Farm was acting as an insurer and was communicating with a party seeking benefits under the insurance contract about an issue in which they have a common interest—the prompt and full payment of the repairs." (Doc. 49 at 15) State Farm published each allegedly defamatory statement to a State Farm insured in response to the insured's request for benefits under an insurance policy. Each statement concerns the quality, timeliness, or value of the plaintiff's automobile repairs—subjects about which the insured and State Farm share a "corresponding interest."[1] Accordingly, State Farm's statements are privileged. See, e.g., Ex Parte Blue Cross & Blue Shield of Ala., 773 So. 2d 475, 479 (Ala. 2000) (finding an insurance company's statements to its insureds qualifiedly privileged; the insurance company "owed each of its insureds an explanation for the denial of payment for the particular

---

[1] At the March 24, 2010, hearing, the plaintiff's counsel stated that each allegedly defamatory statement (1) was published to a State Farm insured and (2) concerned only the quality and cost of the plaintiff's repairs.

- 3 -

procedures and, likewise, [the insurance company] had an interest in the explanations and each of its insureds had a corresponding interest.").

Although the statements are privileged, the plaintiff may recover by showing that State Farm uttered the statements with "express malice." Defined as "ill will, hostility, [or] evil intention to defame and injure," express malice "is a very high standard for a plaintiff to meet." Shaw v. R.J. Reynolds Tobacco Co., 818 F. Supp. 1539, 1542 (M.D. Fla. 1993). The Florida Supreme Court defines "express malice" as follows:

> Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position "to gratify his malevolence." Myers v. Hodges, 53 Fla. 197, 213, 44 So. 357, 362 (1907). See also Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). If the occasion of the communication is privileged because of a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff. Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 149 A.2d 193 (1959); Restatement (Second) of Torts §§ 599, 603 (comment a) (1976). The incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege. . . .
>
> "In cases of qualifiedly privileged publications the presumption . . . of malice from the publication of libelous language does not prevail. The burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue. The existence or nonexistence of such malice, where the facts are controverted, and there is evidence upon the subject, is a question of fact for a jury."

Nodar, 462 So. 2d at 810-12 (quoting Coogler v. Rhodes, 21 So. 109, 112 (Fla. 1897)).

- 4 -

The plaintiff's owner, Ray Gunder, avers (Doc. 62-4) that until 2004 the plaintiff belonged to State Farm's "preferred program." For several years before State Farm terminated the plaintiff from the "preferred program," Ray Gunder openly discussed with other repair shops State Farm's method for determining the "prevailing competitive market rate" for repairing vehicles insured by State Farm. In late 2004, Ray Gunder met with Bob Davis and two other State Farm employees. Bob Davis admonished Ray Gunder for "communicating with other shops in an effort to set pricing in this area." (Doc. 62-4 at 3) Shortly after the meeting, State Farm terminated the plaintiff from the "preferred program." Immediately after the termination, the plaintiff's customers "began inquiring as to the veracity of certain comments that State Farm through its representatives were relaying to them upon those customers indicating to State Farm that they wanted to have their particular damaged vehicle repaired" by the plaintiff. (Doc. 62-4 at 3) According to Ray Gunder:

> State Farm was/is telling my customers: that there are "issues at Gunder's; that they could receive better quality work at another shop; that taking their vehicle to Gunder's would cause unnecessary delays; that Gunder's workmanship is "substandard"; that other auto body repair shops could handle the repair in a more efficient manner; that State Farm has had "real problems" with Gunder's; that Gunder's "overcharges" its customers; that Gunder's charges a higher rate than other shops in the area; that Gunder's is known for procedures that are not needed and not actually done; that State Farm would have to provide the customer approval before they could take it to Gunder's to be repaired; that Gunder's is "too busy" to handle the collision claim; that the customer could not take their vehicle to Gunder's to be repaired and that Gunder's is not an option; that Gunder's is charging a rate that State Farm is not willing to pay; that Gunder's is overcharging rates that are prevailing in the area.

- 5 -

(Doc. 62-4 at 3-4) In essence, the plaintiff alleges that State Farm began falsely accusing the plaintiff of "overcharging" customers promptly after State Farm admonished the plaintiff for attempting to set prices in the area.

Although State Farm's statements (if false) might be defamatory, the plaintiff offers no evidence (other than the alleged falsity of the statements) from which a juror could infer malice. The statements "do not inherently demonstrate express malice." Nodar, 462 So. 2d at 812.

> Examples of cases where the false and defamatory words themselves were so extreme as to intrinsically show express malice are Loeb v. Geronemus, 66 So.2d 241 (Fla.1953) (defendants said plaintiff was guilty of evil conduct, was of low moral character, was a disgrace, a troublemaker, was not respectable, had been compelled to leave Chicago) and Brown v. Fawcett Publications, Inc., 196 So.2d 465 (Fla. 2d DCA 1967) (defendant said plaintiff was a murderer, rapist, and sodomite).

Nodar, 462 So. 2d at 812. State Farm neither attacked the plaintiff's moral character nor accused the plaintiff or its proprietors of violent crime; each allegedly slanderous statement concerns only the matter of common interest between State Farm and the insured—the quality and value of the plaintiff's work.

Additionally, the plaintiff fails to provide extrinsic evidence of express malice. The record shows that State Farm terminated the plaintiff from State Farm's "preferred program" and that the plaintiff objects to State Farm's method of compensating repair shops for paint materials. The plaintiff fails to present evidence showing that State Farm's "primary motive" was to harm the plaintiff rather than to further State Farm and the insured's mutual interest in securing timely, quality repairs to the insured's automobile. Because the plaintiff offers no evidence of express malice, State Farm's motion for summary judgment is **GRANTED**.

- 6 -

Conclusion

State Farm's motion (Doc. 49) for summary judgment is **GRANTED**.[2]  State Farm's motions (Docs. 65, 68) to strike the affidavits of Devon Anderson and Michael Esposito are **DENIED AS MOOT**.  The Clerk is directed to (1) enter judgment in favor of State Farm and against the plaintiff, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on March 26, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[2] On the morning of the March 24, 2010, hearing on State Farm's motion for summary judgment, the plaintiff moved (Doc. 69) for leave to amend the complaint. Although the motion fails to articulate the reason for requesting leave to amend, the plaintiff's counsel stated at the hearing that the plaintiff requested leave "out of an abundance of caution" in order to specify by name additional recipients of State Farm's defamatory remarks. At the hearing, the plaintiff's counsel confirmed that each additional recipient is a State Farm insured and that the proposed amendment effects no change to the qualified-privilege analysis. Because the statements to additional insureds are also privileged, the motion (Doc. 69) is **DENIED AS MOOT**.